IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>)<br>WILLIAM WILBON, )<br>)<br>Defendant. ) | Criminal No. 15-186<br>Civil No. 21-998<br>Judge Nora Barry Fischer |

**MEMORANDUM OPINION**

I.   **INTRODUCTION**

This matter is before the Court on a motion to vacate sentence under 28 U.S.C. § 2255, filed by *pro se* Defendant William Wilbon, (Docket No. 357), the Government's response in opposition, (Docket No. 364), Defendant's reply, (Docket No. 366), the Government's sur-reply, (Docket No. 368), and Defendant's reply to the Government's sur-reply, (Docket No. 369). After careful consideration of the parties' submissions and for the following reasons, Defendant's Motion [357] is denied.

II.   **BACKGROUND**

A federal grand jury returned an indictment on August 25, 2015 charging Defendant with one count of conspiracy to possess with intent to distribute and distribute 280 grams or more of a mixture and substance containing a detectable amount of cocaine base (crack cocaine), from January 2015 to August 2015. (Docket No. 1). United States Magistrate Judge Robert Mitchell issued an arrest warrant for Defendant on August 26, 2015, but he remained at large until his arrest in the Northern District of Ohio on March 2, 2017. (Docket No. 7; Docket No. 224). On May 2, 2018, Defendant entered into a plea agreement with the Government pursuant to which he pled guilty to

a lesser-included offense at count one of the indictment, namely conspiracy to possess with intent to distribute and distribute 28 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(iii). (Docket No. 1; Docket No. 273-1). Defendant agreed to waive his right to take a direct appeal, subject to several exceptions not relevant here. (Docket No. 273-1 at 2). In the agreement, the parties stipulated to a sentence of 72 months pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). *Id.*

In preparation for sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PIR"). (Docket No. 293). The PIR stated that Defendant had been convicted of "Criminal Possession of a Controlled Substance-Intent to Sell Narcotic Drug" at number 2014-311A in Steuben County, New York on October 21, 2015. *Id.* at ¶ 48. The state court sentenced Defendant *in abstentia* on December 23, 2015, to 6 years in prison. *Id.* An active warrant for his arrest in the case had been issued on September 23, 2015. *Id.* The PIR revealed that on October 29, 2014, Defendant sold cocaine to a confidential informant working with the sheriff's department of the Village of Bath for $100. *Id.*

The PIR also stated that Defendant had been convicted of "Criminal Possession of a Controlled Substance-Intent to Sell Narcotic Drug" in Steuben County, New York at number 2015-67 on October 21, 2015. *Id.* at ¶ 49. As in number 2014-311A, the state court sentenced Defendant *in abstentia* on December 23, 2015, to six years in prison, and he had an active warrant for his arrest that had been issued on September 23, 2015. *Id.* For this case, the PIR indicated that on February 3, 2015, Defendant sold cocaine to a confidential informant working with the Village of Bath sheriff's department for $100. The two New York cases were to run concurrently to each other. *Id.* at ¶¶ 48-49.

The Court held a sentencing hearing on September 27, 2018 and imposed a sentence of 72

months' imprisonment. (Docket No. 317). In accordance with federal law, the sentence ran consecutively to the sentences for Defendant's New York cases. *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.").

Neither the Government nor Defendant appealed the Court's judgment. Instead, on July 27, 2021, nearly three years after his sentence, Defendant filed the instant motion under 28 U.S.C. § 2255. (Docket No. 357). On July 30, 2021, the Court notified the Defendant that he needed to amend his motion to include any additional claims in support of relief pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999). (Docket No. 358). Defendant elected to forego adding any additional claims for relief. (Docket No. 360). From there, the Government countered Defendant's motion with a response in opposition on September 14, 2021. (Docket No. 364). Defendant replied on October 4, 2021, (Docket No. 366), and the Government submitted its sur-reply on October 16, 2021. (Docket No. 368). The Defendant filed a reply to the Government's sur-reply on November 2, 2021. (Docket No. 369). As such, the Court considers Defendant's motion fully briefed and ripe for disposition.

### III.     LEGAL STANDARD

A prisoner sentenced by a federal court may move to vacate his sentence under 28 U.S.C. § 2255(a) if such "sentence was imposed in violation of the Constitution or laws of the United States" or "is otherwise subject to collateral attack." As relevant here, a § 2255 motion must be filed within one year of when the date the judgment of conviction becomes final or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." *See id.* § 2255(f)(1), (f)(4).

Generally, a court must order an evidentiary hearing in a federal habeas case if a criminal

defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992); *see also United States v. Tolliver*, 800 F.3d 138, 140-41 (3d Cir. 2015). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also Tolliver*, 800 F.3d at 140-41. If a hearing is not held, the court must accept the criminal defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). In the Court's view, Defendant's motion can be decided after review of the records in the case, and thus a hearing is not necessary.

## IV.    DISCUSSION

Defendant makes a single ineffective assistance of counsel claim in his motion. He claims that his defense attorney, Brian Aston, "failed to advise [the Court] of the relevant conduct term imposed upon him in New York on December 23, 2015. Had [Aston] properly advised the Court of the 6 year relevant conduct term, this Court would have imposed the instant sentence concurrent to that term pursuant [to] U.S.S.G. § 5G1.3(b)(2) and (c)." (Docket No. 357 at 2). In other words, Defendant argues that Aston provided ineffective assistance of counsel at sentencing by failing to argue that the Court should impose the 72-month federal sentence concurrently to his sentences for his New York cases. As relief, Defendant asks the Court to adjust his remaining time in federal custody to a concurrent term that he can serve along with his state sentence. *Id.* at 6. Having considered the parties' arguments, the Court finds that Defendant's claim is barred by the statute of limitations and otherwise lacks merit.[1]

---

[1] Defendant's ineffective-assistance-of-counsel claim is not procedurally defaulted on collateral review even though he did not raise it on direct appeal. *Massaro v. United States*, 538 U.S.

4

### A. Statute of Limitations

Turning first to the statute of limitations issue, the Court finds that Defendant's motion is untimely. The Government chose to focus on the merits of Defendant's motion rather than argue about its timeliness, but, in the Court's view, Defendant's motion is plainly untimely. (Docket No. 364 at 4). Section 2255 motions are subject to a one-year period of limitation. *See* 28 U.S.C. § 2255(f); *see also Kapral v. United States*, 166 F.3d 565, 567 (3d Cir. 1999). Section 2255(f) provides that the one-year limitations period begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4). Defendant does not rely on §§ 2255(f)(2) and (f)(3) to set the running of the statute of limitations in his case. Further, Defendant does not contest that his motion is untimely under § 2255(f)(1) because he did not file it within one year of October 11, 2019 – the date on which his 14-day period to file a notice of appeal expired and his judgment of conviction became final. *United States v. Sayles*, Criminal No. 09-273, 2013 WL 4523593, at *3 (W.D. Pa. Aug. 27, 2013); (Docket No. 316; Docket No. 357). Thus, the only avenue remaining for Defendant is under

---

500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

§ 2255(f)(4).[2] In this Court's estimation, the Defendant has failed to demonstrate that this exception to the statute of limitations applies.

A motion is timely under § 2255(f)(4) if it is filed within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." The Supreme Court has held that a petitioner's duty to exercise due diligence as prescribed in § 2255(f)(4) begins to run when "he is in a position to realize that he has an interest in challenging" the illegal action he is attacking in his collateral proceeding. *See Johnson v. United States*, 544 U.S. 295, 308 (2005). The Supreme Court emphasized that "[t]he important thing is to identify a particular time" that "clearly shows that diligence is in order." *Id*. The Supreme Court also explained that "*pro se* representation alone or procedural ignorance [is not] an excuse for prolonged inattention when a statute's clear policy calls for promptness." *Id*. at 311.

With *Johnson* as a guide, the Court turns to Defendant's claims to identify when he could have discovered "the facts supporting [his] claims" through "the exercise of due diligence." 28 U.S.C. § 2255(f). Since Defendant makes an ineffective assistance of counsel claim, his motion is timely under § 2255(f)(4) if he filed the motion within one year of when he should have discovered his counsel's alleged ineffectiveness. Taking Defendant's allegations as true, the facts which Defendant should have discovered include his defense counsel failing to argue at sentencing that his federal sentence should run concurrently to his undischarged state sentence pursuant to advisory

---

[2] When confronting the statute of limitations issue in his briefing, Defendant cited *Panetti v. Quarterman*, 551 U.S. 930 (2007), for the proposition that the statute of limitations period does not begin to run until "the factual basis" for the motion "becomes ripe." (Docket No. 357 at 1). *Panetti* addressed the meaning of "second or successive" habeas petitions brought under 28 U.S.C. § 2244, rather than when the statute of limitations period begins to run in § 2255 motions. *See Panetii*, 551 U.S. at 947. That said, the Court understands Defendant's argument to be that the factual basis for his § 2255 motion was not "discovered," pursuant to § 2255(f)(4), until "Steuben County (New York) Court refused to resentence [Defendant] nunc pro tunc and concurrent to this Court's term" on July 8, 2021. (Docket No. 357 at 1; Docket No. 357-1 at 1).

sentencing Guidelines §§ 5G1.3(b)(2) or (c).

After review of the record, the Court finds that the "facts supporting [his] claims" were not only "discoverable" by Defendant, but were actually "discovered," no later than June 27, 2019. Indeed, Defendant's own filings reveal his knowledge of his claim by at least June 27, 2019. Thus, the statute of limitations clock under § 2255(f)(4) expired on June 27, 2020, meaning his July 27, 2021 motion is untimely.

With his habeas motion, Defendant attached a copy of an order issued by Judge Patrick McAllister of the County Court of Steuben County on July 8, 2021, rejecting Defendant's June 6, 2021 request to be re-sentenced so that his sentence for the New York cases would run concurrently to his federal sentence. (Docket 357-1 at 1). Judge McAllister observed that Defendant "seeks to be re-sentenced so his sentence in this court can run concurrent with his sentence from the United States District Court of Western Pennsylvania." *Id.* He rejected Defendant's request because Defendant "was sentenced in New York before he was sentenced in Pennsylvania." *Id.* He also suggested that any relief had to come from this Court by noting that "while the Federal sentence could run concurrent with this sentence; this sentence cannot run concurrent with [the federal] sentence." *Id.* Lastly, Judge McAllister noted that "[a] similar motion was brought in June of 2019. That motion was heard on June 27, 2019 and that motion was denied." *Id.*

Based on Judge McAllister's order, the Court finds that Defendant's decision to seek a concurrent sentence in a "similar motion" in June of 2019 to the one he brought in July 2021 reveals Defendant's knowledge of: (1) the fact that Defendant was facing a consecutive state court sentence once he finished his federal term of imprisonment; and, (2) the fact that Aston had declined to ask that the federal sentence run concurrently to the state sentence at the federal sentencing hearing. Thus, on June 27, 2019 (if not earlier at his sentencing hearing), Defendant had knowledge of "the facts supporting" his claim under

7

§ 2255(f)(4).[3]

In sum, it is the Court's view that Defendant's habeas motion brought on July 27, 2021 is untimely because it was brought after June 27, 2020.

### B. The Merits of Defendant's Claims

Beyond the untimeliness of his motion, the Court alternatively holds that Defendant's motion lacks merit. To establish an ineffective assistance of counsel claim, a defendant must first show that "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Collins v. Sec'y of the Pa. Dep't of Corr.*, 742 F.3d 528, 546 (3d Cir. 2014) (quotation marks and citation omitted). The Supreme Court has emphasized that judicial scrutiny of defense counsel's performance is "highly deferential," and a "strong presumption" exists that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Additionally, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.*

If a defendant establishes that his counsel's performance fell below an objective standard of reasonableness, he must then "show prejudice such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Collins*, 742 F.3d at 546 (quotation marks and citation omitted). To establish prejudice, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citations omitted). Here, Defendant's ineffective

---

[3] The Court further notes that Aston's affidavit states that he discussed these matters with the Defendant prior to the change-of-plea hearing on May 2, 2018, and that Defendant accepted the Rule 11(c)(1)(C) plea agreement and pled guilty knowing Aston's opinion that the state cases were not relevant conduct and that the sentences may run consecutively. (Docket No. 368-1). In light of this discussion and the undisputed facts in the PIR concerning the New York cases, Defendant had sufficient facts to raise his ineffective assistance claim within one year of the judgment being final.

assistance claim fails because Aston's representation did not fall below an objective standard of reasonableness. Additionally, even if Aston's representation was not reasonable, Defendant cannot show prejudice.

Advisory sentencing Guideline § 5G1.3(b)(2) provides that if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct)," then the sentence for the instant offense "shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment." Similarly, advisory sentencing Guideline § 5G1.3(c) provides that if "a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions . . . §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment." "In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively." U.S.S.G. § 5G1.3(d).

Defendant maintains that Aston was ineffective for failing to argue at Defendant's sentencing hearing that his New York cases constituted relevant conduct to his federal offense and that this Court should sentence him to term of incarceration concurrent with his state sentences. Under the guidelines, the federal and states sentences could run concurrently if the state sentence was "relevant conduct" in the federal crime. The guidelines, in turn, define relevant conduct as the following:

> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with

>>others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>
>>(i)   within the scope of the jointly undertaken criminal activity,
>
>>(ii)  in furtherance of that criminal activity, and
>
>>(iii) reasonably foreseeable in connection with that criminal activity;
>
>>that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

§ 1B1.3(a)(1).

According to Defendant, Aston should have asserted that Defendant's two New York convictions were relevant conduct to his federal drug conspiracy charge. To that end, the federal grand jury indicted Defendant for participating in a conspiracy to possess with intent to distribute and distribute crack cocaine in the Western District of Pennsylvania and elsewhere from January 2015 until August 2015. (Docket No. 1). Defendant pled guilty to a lesser-included offense of this count. (Docket No. 275). At the change of plea hearing, the Government proffered that members of the conspiracy would obtain crack cocaine in Buffalo, New York, and transport it to the New Castle, Pennsylvania area for sale. (Docket No. 363 at 36). The investigation of the crime was conducted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives along with the Drug Enforcement Administration. *Id.*

In contrast to the federal case, the PIR reveals that Defendant's New York cases were both for the sale of cocaine in the Village of Bath, a town in Steuben County, New York which is approximately 100 miles outside of Buffalo, Erie County, New York and more than 200 miles from New Castle, Pennsylvania. (Docket No. 293 at ¶¶ 48-49). No information in the PIR or elsewhere connects the New York cases to any of Defendant's co-conspirators for the federal case. While federal agencies investigated the drug conspiracy, the Village of Bath's sheriff's department

conducted the controlled buys for which Defendant was convicted in state court. *Id.* at ¶¶ 12, 48-49. Lastly, while one of the New York cases was for distribution of cocaine in February 2015, during the time period of the federal conspiracy that spanned from January 2015 until August 2015, the other New York case was for sale of cocaine in October 2014. *Id.* at ¶ 48. This fact alone would suggest that the October 2014 New York case could not constitute relevant conduct under the guidelines' definition because it occurred outside the time period of the conspiracy. *See* § 3B1.1(a)(1) (defining relevant conduct as acts that "that occurred during the commission of the offense of conviction"); *see also United States v. Morrison*, 826 F. App'x 128, 129-30 (3d Cir. Sept. 2, 2020) (affirming district court's finding that another federal offense was not relevant conduct to the instant offense because the instant offense "occurred at a different time and location" than the other federal offense); *United States v. Pryor*, 771 F. App'x 508, 511 (3d Cir. May 15, 2019) (affirming district court's refusal to find that a state court conviction for heroin distribution committed in March 2010 was relevant conduct to a federal heroin conspiracy charge that the defendant joined in August 2011).

In any event, it is the Court's view that the information in the record shows little factual overlap between Defendant's federal drug conspiracy crime and his two New York drug sale charges, other than the fact that he was selling illegal narcotics. *See United States v. Gonzales*, 133 F. App'x 1, 3 (3d Cir. May 16, 2005); *see also United States v. Schrode*, 839 F.3d 545, 552 (7th Cir. 2016) ("[T]he fact that a defendant commits a certain type of offense on multiple occasions does not inevitably mean that each separate offense is part of the same course of conduct."). As such, the New York cases do not constitute relevant conduct to the federal offense and Defendant was not entitled to relief under Guideline § 5G1.3(b) or (c), as he now claims.

Given the weakness of the relevant conduct argument Defendant now urges, Aston acted

well within the bounds of his discretion as Defendant's counsel not to pursue it. In response to Defendant's habeas motion, Aston submitted an affidavit in which he explained that he investigated the possibility of seeking a concurrent federal sentence and discussed the matter with Defendant. (Docket No. 368-1 at 2-3). Ultimately, Aston "did not believe that the New York controlled buy constituted relevant conduct in the federal wiretap case, and so advised [Defendant]." *Id.* at 3. Instead of bringing what he regarded as a weak argument before this Court, Aston opted to seek relief with the state court in an "attempt to resolve the issue of Mr. Wilbon's undischarged sentence." *Id.* From the Court's perspective, Aston made a reasonable, strategic choice in how to proceed, and the same did not constitute ineffective assistance of counsel. *See Strickland*, 466 U.S. at 690-91 (declaring that strategic choices made by defense counsel during the course of representation are "virtually unchallengeable").

Even if Defendant could establish that Aston's representation fell below the objective standard of reasonableness, the Court further finds that Defendant cannot show prejudice. The guidelines, including § 5G1.3 regarding consecutive and concurrent sentences, are advisory. *Pryor*, 771 F. App'x at 511 (explaining that a district court retains discretion to sentence a defendant to consecutive or concurrent sentences under § 5G1.3 despite the mandatory language "shall" in § 5G1.3's text); *see also United States v. Booker*, 543 U.S. 220, 246 (2005). The Court has discretion to fashion an appropriate sentence within the statutory maximum after considering the § 3553(a) factors, which include consideration of the advisory guidelines. *See United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009). In fact, the Court observed, after imposing its sentence on Defendant, that it would "have given [the Defendant] this kind of sentence even if somehow the guidelines were not properly calculated." (Docket No. 341 at 26). Thus, even if Aston had moved for the federal sentence to run concurrent to Defendant's state sentences, the Court would not have ordered same because it had considered all of the § 3553(a) factors in reaching its decision to accept the parties'

Rule 11(c)(1)(C) plea agreement which did not provide for concurrent sentences. Hence, any "error" by Aston in failing to argue for a concurrent sentence was not likely to produce a different outcome for Defendant. *See Harrington*, 562 U.S. at 104.

For all of these reasons, the Court finds that there is no basis in law or fact justifying the extraordinary relief to set aside Defendant's valid sentence under § 2255. *See United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). Accordingly, his motion is denied.

## V.  CONCLUSION

Based on the foregoing, Defendant's motion to vacate his sentence under 28 U.S.C. § 2255 [357] is denied, with prejudice. The Court also holds that Defendant has failed to make a substantial showing of the denial of a Constitutional right and is not entitled to a certificate of appealability. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: December 9, 2021

cc/ecf: All counsel of record

William Wilbon
BOP # 64648-060
FCI Ray Brook
P.O. Box 900
Ray Brook, NY 12977
(via U.S. mail)